KIRBY *v.* STATE.

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

GEORGE G. ALLEN and B. A. TOWNSEND, both of Sevier-ville, and HOMER A. GODDARD, of Maryville, for defendant in error.

NAT TIPTON, Assistant Attorney-General, for the State.

Mr. Justice Gailor delivered the opinion of the Court.

On November 8, 1943, defendant, Ray Kirby, who appeals, was convicted of an attempt to commit voluntary manslaughter in the Circuit Court of Sevier County, and for the offense was sentenced to serve two years in the State penitentiary.

The alleged assault was committed in a beer tavern known as "Perry's Place" in Sevier County, Tennessee. On the evening of October 2, 1943, Ray Kirby with his two brothers, Charles and Earnest, was sitting at the counter in that tavern drinking beer. After the Kirby brothers had been there for some time Glenn Tarwater, the victim of the assault, with two companions, Cedric and Albert Gibson, came into the tavern and also sat down at the counter and ordered beer. An actual picture of subsequent events is by no means clear from the record. It varies with the testimony of each of the witnesses for the State and for the defense.

However, three witnesses who are apparently neutral and disinterested, and who were not attached to the party of the defendant nor to that of Tarwater, testified that they saw these six young men in the place on the evening in question. Having their attention attracted neither by loud words nor other unusual occurrences, that suddenly there was a free-for-all fight in which some four or five of the young men joined. It is only clear that the defendant and his brothers were fighting on one side, and Tarwater and the Gibson brothers on the other. It does not appear from the testimony of these witnesses, who were the aggressors and who were the defendants. These witnesses are unable to separate the combatants into pairs and can only say that it was a free-for-all melee in which all joined.

They agreed that the only weapons they saw used were the fists of the young men and that none of them saw a knife in the hands of any one of the fighters. It was only after the fight had stopped that any of these three wit-. nesses noticed that Tarwater's clothing had been cut. No one of them saw a weapon in the hands of the defendant, and one of them testified that at the time he had nothing in his hands.

It is useless to review in detail the testimony of the combatants themselves. Their accounts are so prejudiced and contradictory as to be irreconcilable. It is sufficient to note that only one witness, Cedric Gibson, testified that Ray Kirby, the defendant, had a knife in his possession on the evening in question. He said that he saw Ray Kirby with a small, white-handled pocket knife in his hand when he drew some change from his trouser's pocket. This was before the fight started and there is no testimony, whatever, that the knife was ever opened or used during the fray. On cross-examination he identified a white key holder as being the knife in question. We think the testimony of this witness is of little weight.

It is the testimony of all the witnesses that during the fight between defendant and Tarwater, they were standing face to face fighting with their fists and then went into a clinch. Defendant positively denies that he had or used a knife on the evening in question, and he testifies that Albert Gibson, one of Tarwater's friends, had a knife and while trying to cut the defendant, cut Tarwater. Tarwater was cut and stabbed some twelve or fourteen times in the left side and back.

After his conviction defendant made motion for a new trial, and this being overruled, he has perfected his appeal to this Court and made five assignments of error.

We feel it unnecessary to consider these in order as we think a consideration of the fifth and last assignment must dispose of the appeal. The assignment is based on the following cross-examination of the defendant, which shows what then occurred between counsel for the defense, the Attorney-General and the Court:

"Q. How many times have you been indicted? A. This is the only time. Not any.

"Q. How many men have you cut up?"

Objection to question by Mr. Goddard.

Objection sustained by Judge.

"Q. Did you cut up a man by the name of Ramsey?

"Q. Did you cut up a man by the name of Ellison?

"Judge Shepherd: Objection sustained Mr. Attorney General.

"Mr. Wolfenbarger: Q. Never been indicted? A. No.

"Q. Never indicted no where? A. I have been in trouble for drinking or something like that.

"Q. How many times? A. About four or five times.

"Q. In Sevier County? A. Yes.

"Q. How many times in other counties? A. I haven't never been arrested in other counties.

"Q. How about Knox County?"

Objection to question by Goddard.

"Sustained by Court.

"Q. You say five times for drunkenness what else? A. That is all.

"Q. Not for assault?"

Objection by Mr. Goddard.

"Judge: Attorney General can ask if he was convicted?

"Mr. Goddard: That has nothing to do with this case.

"Mr. Wolfenbarger: The judge has ruled I can ask him.

"Mr. Goddard: We except.

"Q. Have you been convicted for assault? A. No."

As shown by the record defendant's counsel made timely exception, preserved these exceptions as ground for motion for new trial and has assigned them here as error.

Clearly, these questions by the Attorney General and his persistency in asking them after the objections had been sustained by the Court were prejudicial to the defendant. It is difficult to see how, in the state of this record, the jury could have convicted the defendant except on a prejudice created by these inadmissible questions.

█ The rule with regard to the admission of evidence of other offenses on a criminal trial is well stated to be: "Evidence material to the issue under investigation in a criminal case is never rendered incompetent because it tends to show that the accused has committed other crimes. It is competent or incompetent according to whether it is relevant to the issue on trial and has probative value. If incompetent by that test, its tendency to show guilt of another offense may cause it to be prejudicial to the accused and therefore ground for reversal." *Woodruff et al.* v. *State*, 164 Tenn. 530, 539, 51 S. W. (2d) 843, 845.

█ Clearly, in the present case, when the test of whether "it is competent or incompetent according to whether it is relevant to the issue on trial and has probative value," is applied, it is clearly that the questions asked on cross-examination were inadmissible.

In the present case there was no issue of identity (*Mays* v. *State*, 145 Tenn. 118, 238 S. W. 1096) ; motive, *scienter,* or a series of crimes (*Thompson et al.* v. *State*, 171 Tenn. 156, 101 S. W (2d) 467; *Waller* v. *State,* 178 Tenn. 509, 160 S. W. (2d) 404) ; therefore, there was no pertinent ques-

tion at issue to bring the evidence of other offenses within the closely limited exception to the general rule.

We think a study of the record discloses that the only purpose of this cross-examination was to lead the jury to suppose that because the defendant had stabbed other victims that he had been guilty in the case on trial. It is because such independent actions in the past have no probative value whatever, and are calculated only to prejudice the jury against the defendant, that such evidence is held to be inadmissible.

Without a consideration of this objectionable evidence it is difficult to see how the jury concluded that the defendant stabbed the prosecutor. The prosecutor and the defendant were engaged in a fist fight face to face. The evidence is clear that they never clinched during the encounter, and no witness testified that defendant had a knife in his hand during the fight.

For the reasons stated, we think the fifth assignment of error must be sustained, the judgment reversed and the case remanded.

GREEN, C. J., CHAMBLISS and NEIL, JJ., and WEBB, Special Judge, concur.