**STATE of Tennessee, Petitioner,**

v.

**David MORGAN, Respondent.**

Supreme Court of Tennessee.

Aug. 9, 1976.

Etrula R. Trotter, Asst. Atty. Gen., Nashville, for petitioner; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

John Edgar Brown, III, Bell, Painter, McMurray, Callaway, Brown & Mashburn, Cleveland, for respondent.

## OPINION

FONES, Justice.

Defendant Morgan was convicted of assault with a deadly weapon and sentenced to not less than one (1) nor more than two (2) years in the penitentiary.

The Court of Criminal Appeals reversed and remanded for a new trial, each member of the panel writing a separate opinion. All agreed that reversible error was committed but did not agree on the principles of law applicable to cross-examination of a defendant about prior convictions, nor on the admissibility or scope of rebuttal in the event of a denial thereof by defendant. We granted the writ of certiorari because our case law is not clear on these questions.

Defendant testified in his own behalf and was cross-examined, in part, as follows:

"GENERAL FISHER: . . . Any prior felony convictions, Mr. Morgan?

A. Do what?

Q. Do you have any prior felony convictions?

MR. BROWN: Your Honor, I object to that.

THE COURT: That would be competent, any prior felony convictions.

MR. BROWN: I would doubt if he even knows what that means.

THE COURT: If he has had them he would know. I don't know whether he has had them or not, Mr. Brown. Have you been convicted of a felony, Mr. Morgan?

A. No, I wouldn't what you would say convicted of a felony. Do you mean shooting somebody?

THE COURT: No. Convicted of a felony. Have you ever been sent to the penitentiary?

A. No, Sir, I have never been in the penitentiary.

Q. Have you ever been sentenced to the penitentiary?

A. No, Sir.

Q. Got a suspended sentence.

A. No, I ain't.

Q. What?

A. Suspended sentence.

Q. Yes.

A. I have had suspended sentences all right but—

MR. BROWN: Your Honor, again I object. He doesn't understand what a felony is—

GENERAL FISHER: Well, let's take a short recess and let Mr. Brown explain it to him, please the Court.

THE COURT: No, I am not going to do that. If you had a suspended sentence what was it for, Mr. Morgan?

A. Well, me and a guy—

THE COURT: Don't tell what you and the guy did. Tell what the charge was.

A. For stealing.

THE COURT: All right. That's what he was asking you.

A. Yeah, I was charged for stealing all right.

THE COURT: Okay.

GENERAL FISHER: That's all."

At the conclusion of defendant's proof, the State called Joe Talley, the clerk of the Criminal Court of Bradley County, as a rebuttal witness. He testified that the records in his office reflected that David Wayne Morgan was tried on October 26, 1962, convicted of assault to commit voluntary manslaughter, and sentenced to one year in the penitentiary.

During the course of adducing the foregoing testimony, an objection was raised that defendant had not been identified as the same David Morgan convicted in 1962. As a result of that objection, testimony of defendant and his son was thereafter interlaced with that of Talley; and the Attorney General dispatched the clerk to his office for additional records. Upon his return, Talley testified that in the 1962 case Morgan shot one Beecher Watson, the prosecuting witness; that it happened in a poolroom; and that he personally recalled the defendant on trial to be the same David Morgan tried and convicted in the former case.

All of the cross-examination quoted above and the events described, took place in the presence of the jury.

No instruction was given the jury by the Court that the proof of the prior conviction was admitted solely on the issue of the credibility of the defendant as a witness, and that it should not be considered upon the issue of guilt or innocence.

This case was tried on July 24, 1974, almost twelve (12) years after the former conviction and raises a question of remoteness.

## I.

Our decisions dealing with the scope of cross-examination on the issue of credibility of a criminal defendant who elects to testify in his own behalf are in conflict.

■ It is clear that a defendant who elects to testify may be asked on cross-examination whether he has been convicted of an offense involving moral turpitude. With respect to prior indictments, pending indictments, instances of alleged commission of specific bad acts involving moral turpitude and the ambiguous words "charges" and "offenses," authority may be found for and against admissibility as subject of cross-examination.

Compare *Zanone v. State*, 97 Tenn. 101, 36 S.W. 711 (1896); *Powers v. State*, 117 Tenn. 363, 97 S.W. 815 (1906); *Keith v. State*, 127 Tenn. 40, 152 S.W. 1029 (1912); *Brooks v. State*, 187 Tenn. 67, 213 S.W.2d 7 (1948); *Gray v. State*, 191 Tenn. 526, 235 S.W.2d 20 (1950); *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460 (1963); and *Collard v. State*, 526 S.W.2d 112 (Tenn.1975) with *Hendricks and Brooks v. State*, 162 Tenn. 563, 39 S.W.2d 580 (1931); *Kirby v. State*, 182 Tenn. 16, 184 S.W.2d 41 (1944) and *Posley v. State*, 199 Tenn. 608, 288 S.W.2d 455 (1956).

The *Zanone* group of cases allow cross-examination beyond convictions involving moral turpitude while *Hendricks and Brooks, Kirby* and in particular *Posley* are subject to the interpretation that a testifying criminal defendant, as distinguished from other witnesses, may only be asked about prior convictions involving moral turpitude.

The moral turpitude standard, applied to convictions or to specific acts, offenses and charges, is a source of much disagreement.

The Court in *Brooks v. State, supra*, acknowledging that the term "moral turpitude" has no satisfactory definition, quoted from a standard law dictionary:

> " 'An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowmen or to society in general, contrary to the accepted rule or right and duty between man and man.' " 213 S.W.2d at 11.

In applying this definition, the courts of this State have experienced difficulty in determining whether a specific crime involves moral turpitude and may be used for impeachment.[1]

The Court in *Davis v. Wicker*, 206 Tenn. 403, 333 S.W.2d 921 (1960), held that defendant in a civil action was properly impeached by showing a conviction for not having a proper driver's license. In *McKenzie v. State*, 3 Tenn.Cr.App. 362, 462 S.W.2d 243 (1970), the Court apparently found that a conviction for inciting to riot involved moral turpitude, while a conviction for inciting children to leave school did not. In *Everhart v. State*, 194 Tenn. 272, 250 S.W.2d 368 (1952), the Court held that a testifying defendant might be asked about convictions for violating the liquor law. The Court in *Gray v. State, supra*, held that being a bootlegger does not involve moral turpitude. Although these examples do not represent a comprehensive collection of our cases, they are illustrative of the difficulty that our courts are faced with in applying a test that is vague and cannot be explicitly defined.

The Court in *Zanone* condemned inquiries into remote matters, for the reasons expressed in a quote from Greenleaf On Evidence:

> "[T]he interests of justice do not require that errors of any man's life, long since repented of and forgiven by the community, should be recalled to remembrance and their memory be perpetuated in judicial documents, at the pleasure of any future litigant. The State has a deep interest in the inducements to reformation held out by the protecting veil which

is thus cast over the past offenses of the penitent." 97 Tenn. at 118, 36 S.W. at 715.

We are persuaded that adoption of the Federal Rules of Evidence on this question should achieve a higher degree of consistency, fairness and justice and better serve the quest for truth. The Federal Rules of Evidence applicable to the inquiry under consideration in this case are Rule 608(b) and Rule 609(a) and (b). Said Rules are as follows:

### Rule 608.
### Evidence of Character and Conduct of Witness

.    .    .    .    .

(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

### Rule 609.
### Impeachment by Evidence of Conviction of Crime

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or im-

---

1. *See* Paine, Tennessee Law of Evidence, § 202 at 225.

prisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

## II.

■ In this case the question asked by the District Attorney was, "Do you have any prior felony convictions?" That question is too broad because it could elicit incompetent testimony. *Campbell v. State,* 469 S.W.2d 506 (Tenn.Cr.App.1971). The question of whether evidence of a particular crime or specific acts is admissible must be determined by the trial judge out of the presence of the jury, to avoid possible prejudice to defendant. If it is determined that the prior crime is within the admissible category, the inquiry in the presence of the jury,

". . . [M]ust be limited to the fact of a former conviction and of what crime, with the object only of affecting the credibility of the witness, not prejudicing the minds of the jury as to the guilt of the defendant witness of the crime for which he is on trial." 162 Tenn. at 566, 39 S.W.2d at 581.

Also, see *McGee v. State,* 206 Tenn. 230, 332 S.W.2d 507 (1960) where this Court approved the action of the trial judge in not allowing the details of the offense—assault to commit murder in the first degree—to be related to the jury. Defendant McGee had pistol-whipped a young girl.

## III.

The plurality opinion of the Court of Criminal Appeals held that if defendant denied a prior conviction involving moral turpitude or affecting credibility, the issue is foreclosed and the State cannot adduce any evidence to the contrary in rebuttal.

■ That is the rule where defendant is cross-examined about prior specific bad acts involving moral turpitude or affecting credibility, as distinguished from prior convictions. *Gray v. State, supra, Powers v. State, supra,* and *Zanone v. State, supra,* relied upon by the Court of Criminal Appeals involved bad acts, not convictions; and the answers of the defendants were held to be conclusive and not subject to contradiction in rebuttal. Parenthetically, it is well to note that *Zanone* stated the rule as allowing cross-examination as to specific acts and indictments involving moral turpitude; but *Posley v. State, supra,* and *Brooks v. State, supra,* have held to the contrary as to indictments, charges and accusations that some particular offense has been committed, and we approve the latter cases on that question.

The plurality opinion also relies on the following quote from Chief Justice Neil's concurring opinion in *Posley*:

"But cross-examination must be confined to crimes (1) where a defendant, or the witness, has been convicted, and which admittedly involves moral turpitude; and (2) his character wherein he has committed offenses contrary to accepted standards of decency and morality, but which may not necessarily be subject to criminal prosecution. The State, of course, is bound by his answer in the sense that it cannot prove by way of rebuttal that he was guilty of the specific wrongs and

offenses about which he had been asked." 288 S.W.2d at 459.

We think that only answers to the second category of questions under discussion by Chief Justice Neil, that is "offenses" not necessarily subject to prosecution (bad acts), were intended to be conclusive. Earlier in the same concurring opinion the author had said, "If he is guilty of such a crime, involving moral turpitude, the record of conviction is the best evidence." 288 S.W.2d at 458.

We hold that a defendant's negative answer to a proper question involving a prior conviction is not conclusive; and the State may introduce in rebuttal, in the approved manner, the documentary evidence of the conviction, but nothing more. No lengthy inquiry into collateral matters is involved as would be the case if rebuttal should be allowed where bad acts are in question and denied.

We further hold that where a witness is sought to be cross-examined as to specific instances of conduct as contemplated by Rule 608(b), the Court shall conduct a jury-out hearing for the purpose of determining that the probative value of such evidence outweighs its prejudicial effect. When such cross-examination is permitted the answer of the witness shall be conclusive. Apparently no Tennessee case has so held, but inferentially *Fee v. State,* 497 S.W.2d 748 (Tenn.Cr.App.1973) supports this rule.

Both concurring opinions in the case at bar insist that the correct rule allows proof of the record of conviction in rebuttal. Cases from other states in conformity with our conclusion are: *Headley v. State,* 51 Ala.App. 148, 283 So.2d 458 (1973); *People v. Theodore,* 121 Cal.App.2d 17, 262 P.2d 630 (1953); *State v. Sorrell,* 85 Ariz. 173, 333 P.2d 1081 (1959); *Lockwood v. State,* 107 So.2d 770 (Fla.App.1958); *State v. Bock,* 80 Idaho 296, 328 P.2d 1065 (1958); *Hardin v. State,* 232 Miss. 470, 99 So.2d 600 (1958); *City of Troy v. Cummins,* 107 Ohio App. 318, 159 N.E.2d 239 (1958). See also, Paine, Tennessee Law of Evidence, § 205.

IV.

Whether Morgan's prior conviction of assault with intent to commit murder involves moral turpitude under prior decisions of this Court presents a difficult question.

In his concurring opinion, presiding Judge Walker correctly observes that, "voluntary manslaughter is when one kills another upon a sudden heat, produced by adequate provocation without malice, and is an act of passion rather than judgment."

Neither a conviction of voluntary manslaughter nor assault with intent to commit voluntary manslaughter renders one infamous pursuant to T.C.A. § 40–2712, which permits the use of convictions of infamous crimes as a reflection upon credibility.

In our opinion, if the 1962 conviction could be held to involve moral turpitude under our prior case law, it would be necessary to reverse this case because of the testimony of the clerk relating to details of the offense and the failure of the trial judge to instruct the jury that proof of the prior conviction was admitted solely on the issue of the defendant's credibility as a witness, and could not be considered as to defendant's guilt or innocence.

It appears that under the tests we have adopted today, the 1962 conviction would not be admissible for remoteness. On remand, if the State seeks to introduce the prior conviction, the trial judge shall determine out of the presence of the jury whether or not it is admissible under the rules we have adopted in this opinion.

The results reached by the Court of Criminal Appeals are affirmed for the reasons stated herein, and the case is remanded to the Criminal Court of Bradley County for a new trial.

HENRY, BROCK and HARBISON, JJ., and HYDER, Special Judge, concurs.